UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-cv-00159-JHM

KEVIN LITTLEPAGE                                                                                           PLAINTIFF

V.

CENTURY ALUMINUM COMPANY,                                                                   DEFENDANTS
LEHIGH OUTFITTERS, LLC, and
ROCKY BRANDS, INC.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Century Aluminum Company's Motion for Summary Judgment [DN 20]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendant's Motion is **GRANTED**.

I. BACKGROUND

At all times relevant and at the time of Plaintiff's injury, Plaintiff Kevin Littlepage was an employee of Century Aluminum Sebree (hereafter "CA-Sebree"). (Compl. [DN 1] at 3.) CA-Sebree is a wholly owned subsidiary of Defendant Century Aluminum Company (hereinafter "CAC"). (Id.) Littlepage worked at CA-Sebree's aluminum smeltering plant facility located in Henderson, Kentucky. (Id.) On December 17, 2014, Littlepage was assigned the job of a "pot worker" in the plant. (Id. at 4.) The pots contained molten aluminum and were used in the smeltering process during aluminum manufacture. (Id.) While walking across the walkway that was level with or above the open pots, Littlepage slipped and his right foot contacted the molten aluminum contained in one of the pots. (Id. at 5.) His boot ignited, and he suffered severe injuries to his right leg and foot. (Id.) Plaintiff alleges that debris and residue from the pots splashed onto the walkway, making it slippery and causing his fall. (Id.)

As a result of his injury, Littlepage received workers' compensation benefits. (Def.'s Mem. Supp. Mot. Summ. J. [DN 20-1] at 4.) These benefits were paid pursuant to the contract between CAC and Healthsmart, established for the benefit of CA-Sebree. (Id.) Healthsmart provides claims adjustment services for CAC in order to cover CA-Sebree employees' workers' compensation claims. (Id. at 6.) As of October 16, 2016, Littlepage has received a total of $308,945.33 in workers' compensation benefits, which accounts for lost wages, medical expenses, and other expenses. (Id. at 8.) However, Littlepage filed the instant action against CAC alleging numerous independent acts of negligence and gross negligence that he claims were the causes of his injury. (Compl. [DN 1] at 5–8.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to

particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

CAC requests that the Court grant its Motion for Summary Judgment because CAC is immune to tort liability under Kentucky's workers' compensation statute's exclusive remedy provision. CAC chiefly argues that it was CA-Sebree's carrier. (Def.'s Mem. [DN 20-1] at 9–16.) Alternatively, CAC asserts that it was Littlepage's direct employer or Littlepage's up-the-ladder employer. (Id. at 16–21.) Littlepage contests each argument, claiming CAC is not entitled to immunity under any theory.

Principally, CAC contends that it is CA-Sebree's carrier. Under KRS § 342.690(1), the "exclusive remedy provision," an employee cannot pursue a common-law tort action against an employer who has qualified under and has complied with the provisions and requirements of the workers' compensation statutes. This immunity "extend[s] to such employer's carrier." KRS § 342.690(1). CAC asserts that, as CA-Sebree's carrier, it is entitled to this immunity from tort liability. CAC primarily relies on the Falk case to support this contention. In Falk, the Kentucky Supreme Court ruled that "a parent company that completely 'self-insures' the liability of its subsidiary as provided in the regulations, is a carrier and immune from tort liability, just as its subsidiary is." Falk v. All. Coal, LLC, 461 S.W.3d 760, 766 (Ky. 2015). Per 803 KAR 25:021, Alliance, the parent company, filed the appropriate forms, had sufficient assets, and was

approved to insure itself along with its subsidiaries for any workers' compensation claims filed by the employees of its subsidiaries. Id. at 763–64.

Here, the facts are slightly different, and Falk is not fully dispositive. CAC, the parent company, guaranteed all of CA-Sebree's workers' compensation claims, but CAC has never intended to be self-insured or to directly pay the compensation as Alliance did in Falk. CAC itself is not self-insured, but, CA-Sebree, its subsidiary, is a self-insured employer, guaranteed by CAC. Both Plaintiff's and Defendant's affidavits of B. Dale Hamblin, Jr., the Assistant Director for the Division of Security and Compliance within the Kentucky Department of Workers' Claims (hereinafter "DWC"), confirm that as of June 1, 2013, CAC agreed to assume and guaranteed to pay or otherwise promptly discharge all of the liabilities of CA-Sebree, its subsidiary, by way of Form SI-01 Self Insurers' Guarantee Agreement. (Hamblin Aff. [DN 20-4] at 3; Hamblin Aff. [DN 24-5] at 2–3.) On the date of injury, December 17, 2014, the DWC Commissioner had authorized CA-Sebree to self-insure as a subsidiary of CAC, and all of CA-Sebree's self-insurance liabilities and obligations were guaranteed by CAC. (Hamblin Aff. [DN 20-4] at 2.) There does not appear to be any dispute that CA-Sebree was an authorized self-insured employer under 803 KAR 25:021. Based upon the record and the pleadings, there is no genuine issue of material fact as to whether or not CA-Sebree was a self-insured employer on the date of injury.

Plaintiff argues that CAC, the parent company, never filed form SI-02 as an applicant seeking to be approved as a self-insurer for itself and its subsidiary, CA-Sebree. (Pl.'s Response [DN 24-1] at 12.) The issue to be addressed here is not whether CAC itself was self-insured, as

it appears it was not (CAC never argues that it was self-insured).[1]  Rather, the question to be resolved here is whether CAC, as a guarantor of CA-Sebree, a self-insured subsidiary, is entitled to immunity under the Kentucky Worker's Compensation Act.  As this Court is sitting in diversity, see 28 U.S.C. § 1332, the Court will apply the law of the forum state, here, Kentucky. Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir. 2003) (citing Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001)).  Because the question at issue has not yet been resolved by the Kentucky courts, we must attempt to predict what the Kentucky Supreme Court would do if confronted with the same question.  Belt v. Carter, No. 5:14-CV-00082-TBR, 2015 WL 4574846, at *4 (W.D. Ky. July 29, 2015) (citing Himmel, 342 F.3d 593, 59); see Stalbosky v. Belew, 205 F.3d 890, 893–94 (6th Cir. 2000)).

Plaintiff claims that CAC merely acted as CA-Sebree's "guarantor" rather than as its "carrier" and should not be afforded immunity.  Under Falk, a self-insured parent company can act as a self-insured subsidiary's carrier.  Because CAC itself is not self-insured, Plaintiff asserts that CAC cannot be a carrier and is not immune.  In response,  CAC argues that a parent company stands in the same position, whether classified as a guarantor or a carrier, each assuring—in one form or another—that the claims of its subsidiary's employees will be paid regardless of its subsidiary's ability to pay.  CAC insists that its status as a guarantor alone does not undermine its responsibility and obligation to ensure that its subsidiary's employees' compensation be paid.

To support its contention, CAC cites Malkiewicz, in which the Sixth Circuit certified the following question to the Supreme Court of Tennessee: "Under Tennessee's Workers' Compensation scheme . . . is the 'guarantor' of a 'self-insured' employer's obligations entitled to

---

[1] Whether or not CAC filed form SI-02 seeking self-insured status for itself is immaterial to the true matter at hand, as the Court will treat CAC as a non-self-insured entity.  Therefore, any of Plaintiff's arguments regarding CAC failing to file the correct forms in order to become self-insured are inapposite.

the same immunity from suit afforded an 'insurer' of an employer's worker's compensation obligations?" Malkiewicz v. R. R. Donnelley & Sons Co., 794 S.W.2d 728, 728 (Tenn. 1990). The court reasoned that "[l]ike the employer, the guarantor, or entity which will guarantee the payment of compensation benefits in the amount and manner when due as provided for in this chapter . . . is liable without fault for those benefits." Id. And, "[w]hen [the guarantor] pays [the benefits], funds their payment[,] or assumes responsibility for them, [the guarantor] should stand in the same position as the . . . insurer with respect to the exclusivity provisions." Id. Ultimately, the court found that "there is no 'principled' distinction between the status of a workers' compensation insurer and that of [a guarantor], which guaranteed the employer's financial ability to comply with the workers' compensation statutes." Id. at 730 (quoting Malkiewicz v. R.R. Donnelley & Sons Co., 703 F. Supp. 49, 50 (M.D. Tenn. 1989), aff'd, 932 F.2d 968 (6th Cir. 1991)). Although the parent corporation was not legally responsible for the working conditions of its subsidiary's employees merely on the basis of the parent-subsidiary relationship, it could be exposed to potential liability by attempting to improve worker safety; therefore, granting immunity to the guarantor was desirable because it would remove this legal disincentive to create a safe work environment. Id. at *50–51. Taking this ruling into consideration, the Sixth Circuit affirmed the Middle District of Tennessee's decision that under Tennessee law, the defendant parent company was immune for tort liability and that the plaintiffs' sole remedy was under the workers' compensation statute. Malkiewicz v. R.R. Donnelley & Sons Co., 932 F.2d 968, at *1 (6th Cir. 1991) (unpublished table opinion).

Though little precedent is available, other states have also addressed this distinction, finding that a guarantor, much like a carrier, is similarly immune to tort liability. For instance,

the New Mexico state legislature codified the inclusion of guarantors in the grant of immunity under the New Mexico Workers' Compensation Act. The statute reads:

> The Workers' Compensation Act provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer, **guarantor or surety** of any employer, for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act.

N.M. Stat. Ann., § 52-1-6(E) (emphasis added). The Supreme Court of New Mexico and the United States District Court of New Mexico have both utilized this provision to grant immunity under the workers' compensation statute. See Lopez v. Am. Baler Co., No. CIV 11-0227 JB/GBW, 2014 WL 1285448, at *6 (D.N.M. Mar. 27, 2014); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at *20 (D.N.M. Sept. 30, 2013); Vasquez v. Am. Cas. Co. Of Reading, No. S-1-SC-35681, 2016 WL 5944996, at *2 (N.M. Oct. 13, 2016). Additionally, the Supreme Court of Arkansas has held that even a mere guarantor of workers' compensation benefits enjoys the same immunity as the employer under the workers' compensation act. Lewis v. Indus. Heating & Plumbing of St. Joseph, Mo., 718 S.W.2d 941, 942 (Ark. 1986).

Discussing the developments in this field, the Modern Workers Compensation treatise states: "Under most state workers' compensation statutes, a workers' compensation insurer has, at least partial, immunity from liability for its negligence as the exclusive remedy provision generally bars an employee's common-law action against the employer's compensation insurer for covered injuries. **The same immunity has been extended to the employer's workers' compensation surety, or a guarantor**." 1 Modern Workers Compensation § 103:4, Westlaw (database updated December 2016) (citing Idaho Code Ann. § 72-209 (specifically immunizing guarantors and sureties from tort liability); N.M. Stat. Ann. § 52-1-6(E) (same)).

The Court agrees and predicts that Kentucky courts would follow this modern trend. Under Kentucky's Workers' Compensation Act, "[e]very employer . . . shall be liable for compensation for injury, occupational disease, or death without regard to fault as a cause of the injury, occupational disease, or death." KRS § 342.610. "An employer may secure payment of compensation by: (1) joining or forming a self-insured fund pursuant to KRS [§] 342.350(4); (2) purchasing insurance from a 'corporation, association, or organization authorized to transact the business of workers' compensation insurance in this state' [KRS § 342.340(1)]; or (3) furnishing to the Commissioner of the DWC 'proof of its financial ability to pay directly the compensation.' [KRS § 342.340(1).]" Falk, 461 S.W.3d at 763. For the third path, the DWC has "devised a method of authorizing employers to self-insure" under 803 KAR 25:021. Id. This is the path that CA-Sebree chose. CA-Sebree applied for and was approved to be a self-insured employer. (Hamblin Aff. [DN 20-4] at 3; Hamblin Aff. [DN 24-5] at 2–3.) CAC, CA-Sebree's parent company, furnished form SI-01 (Self-Insurer's Guarantee Agreement) and agreed to guarantee CA-Sebree's financial ability to comply with the workers' compensation statutes. (Hamblin Aff. [DN 20-4] at 2.)

803 KAR 25.021 §1(3) contemplates the exact situation at issue here: a subsidiary using its parent company as a guarantor in its application for self-insurance. The regulation defines a "guarantor" as "a parent company whose financial statement is used by the applicant to obtain self-insurance status." 803 KAR 25.021 § 1(3). In fact, if the applicant for self-insurance is a subsidiary, the regulation requires the subsidiary to submit "a guarantee from the subsidiary's parent corporation on Form SI-01, Self-Insurers' Guarantee Agreement." 803 KAR 25.021 § 3(1)(i). In so doing, the guarantor assures that injured employees of the subsidiary receive the benefits to which they are entitled.

8

Under KRS § 342.690, immunity from tort liability extends to both the employer and the employer's carrier. In Falk, the "carrier" was the parent corporation that insured itself and its subsidiaries. While, here, CAC, the parent, does not insure itself, it does insure CA-Sebree, its subsidiary. As CAC is liable without fault for any workers' compensation benefits claimed by employees of its subsidiary, CA-Sebree, it should stand in the same position as an insurer. Malkiewicz, 794 S.W.2d at 730. In fact, CAC, by definition, functions as an insurer, as it has agreed "to assume the risk of another's [CA-Sebree's] loss and to compensate for that loss," Insurer, Black's Law Dictionary (10th ed. 2014).

Under KRS § 342.0011(6), "'[c]arrier' means any insurer, or legal representative thereof, authorized to insure the liability of employers under this chapter and includes a self-insurer." The Kentucky Supreme Court has suggested a broad reading of the term "carrier." As the Falk court explained,

> The legislature could have more narrowly defined carrier as an insurance company, which it did when it defined "insurance carrier." KRS 342.0011(22) (" 'Insurance carrier' means every insurance carrier or insurance company authorized to do business in the Commonwealth writing workers' compensation insurance coverage . . . .") Furthermore, the legislature could have stated that only an insurance carrier is immune from liability. However, the legislature chose to define carrier more broadly, thus extending immunity beyond insurance companies authorized to do business in the Commonwealth.

Falk, 461 S.W.3d at 764–65. With this broad language, the legislature did not limit "carrier" to an "insurance carrier" alone, and included all "authorized" insurers. Here, CAC was authorized to insure the liability of an employer, CA-Sebree. (Hamblin Aff. [DN 20-4] at 2–3.) Much like the Supreme Court of Tennessee, the Court cannot find any "principled distinction" between the status of a workers' compensation insurer and that of a guarantor. Malkiewicz, 794 S.W.2d at 730. Therefore, because a "carrier" is any authorized "insurer" under KRS 342.0011(6), and the Court will treat CAC, a guarantor, as an authorized insurer, CAC is entitled to immunity as such.

Further, extending immunity to a guarantor aligns with policy principles underlying the workers' compensation exclusivity provision. The Restatement (Second) of Torts § 342A cites the <u>Malkiewicz</u> case to illustrate that though Section 342A typically holds negligent actors liable to third parties in tort, some potentially negligent actors, like an employer and its guarantor, are exempt from this section under workers' compensation laws. This exception creates an incentive for both the employer and guarantor to create a safe work environment. Restatement (Second) of Torts § 342A (1965). Without immunity from tort, an insurer or guarantor would have a disincentive to provide for a safe workplace because it could potentially open itself to tort liability. <u>Id.</u> Extending immunity to these parties removes that disincentive and helps to protect workers while still ensuring payment of their claims. <u>Id.</u> Illustratively, including guarantors like CAC in this immunity helps promote these policies because CAC was directly involved in the safety of CA-Sebree's aluminum plant. (Compl. [DN 1] ¶ 5; Def.'s Mem. [DN 20-1] at 2.)

Overall, because CAC, as a guarantor, is immune from tort liability, Plaintiff's claims can no longer proceed.[2] Accordingly, Defendant's Motion for Summary Judgment is granted.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 20] is **GRANTED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

January 30, 2017

cc: counsel of record

---

[2] Defendant asserts other arguments in the alternative: it is Littlepage's direct employer and that it is Littlepage's up-the-ladder employer. With this decision, both arguments are now moot.